UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


TRAVIS COLLINS                                    CIVIL ACTION

VERSUS                                            NO: 15-1468

NEW ORLEANS HOME FOR                              SECTION: J(1)

INCURABLES

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss for Failure to State a Claim* (**Rec. Doc. 8**) filed by Defendant, New Orleans Home for Incurables, doing business as the John J. Hainkel, Jr. Home & Rehabilitation Center ("Defendant") and an *Opposition* thereto (**Rec. Doc. 9**) by Plaintiff, Travis Collins ("Plaintiff"). This motion is set for Oral Argument before the Court on July 15, 2015. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

## PROCEDURAL AND FACTUAL BACKGROUND

This matter arises out of claims brought by Plaintiff regarding the use of an electric power wheelchair. Plaintiff is a paraplegic as a result of a gunshot wound which he incurred at

the age of fifteen. Since approximately 1996, Plaintiff has resided at a nursing home ("the Hainkel Home"), which is owned and operated by Defendant. Plaintiff alleges that during the majority of his residency at the Hainkel Home, he transported himself via a power wheelchair, which allowed him to travel within and outside of the Hainkel Home. As a paraplegic, Plaintiff is unable to travel via a manual wheelchair. Plaintiff further alleges that in 2013, his power wheelchair stopped working and became inoperable. At this time, Plaintiff's friends, Madeleine Burns and Carro Gardner, contacted Defendant regarding their desire to purchase Plaintiff a new power wheelchair worth $7,000 as a gift. Defendant advised Ms. Burns and Ms. Gardner to make the payments directly to Defendant, who would then deposit the money in Plaintiff's resident trust fund account. The women made the payments, and on April 7, 2014, Defendant disbursed the money from Plaintiff's account and purchased a new power wheelchair.

From April 2014 until July 2014, Plaintiff alleges that he used the power wheelchair purchased for him by Ms. Burns and Ms. Gardner. Plaintiff further alleges that in July 2014, without his consent, Defendant transferred the power wheelchair from his room at the Hainkel Home to another location, where it was not

accessible to Plaintiff. Plaintiff contends that Defendant claimed the wheelchair was in need of repairs and refused to permit Plaintiff to use the wheelchair. Due to Plaintiff's inability to use the wheelchair, he alleges that he is unable to leave the Hainkel Home and participate in the community.

Plaintiff filed the present lawsuit in this Court on May 4, 2015. In his Complaint, Plaintiff alleges that by depriving him of the use of his power wheelchair, Defendant has violated the Fair Housing Act, Title III of the Americans with Disabilities Act ("the ADA") and Section 504 of the Rehabilitation Act of 1973. Plaintiff also states causes of action for conversion and breach of contract under Louisiana law. As a result of these alleged violations, Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

In response to Plaintiff's Complaint, Defendant filed the instant motion seeking dismissal of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant argues that because Plaintiff's claims arise from Defendant's provision of medical care, they are essentially medical malpractice claims encompassed by the Louisiana Medical Malpractice Act ("the LMMA"). Defendant further asserts that because Plaintiff has not submitted his claims to a medical

review panel prior to filing the present lawsuit as required by the LMMA, the Court should determine that Plaintiff's claims are premature and should be dismissed.

## LEGAL STANDARD

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The

allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S.at 678.

## DISCUSSION

Defendant asserts that despite the multiple types of claims included in Plaintiff's Complaint, all of the claims are essentially for medical malpractice and are encompassed by the LMMA. The LMMA mandates as follows:

> No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.

La. Rev. Stat. Ann. § 1299.47 (2012). It is undisputed by the parties that Plaintiff did not submit his claims to a medical review panel prior to the filing of this lawsuit. Because of this, Defendant argues that dismissal of Plaintiff's claims is warranted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In response, Plaintiff disputes that his claims sound in medical malpractice. Instead, Plaintiff asserts that his claims are purely for violations of his rights guaranteed by Louisiana law and federal non-discrimination statutes as a result of Defendant's intentional deprivation of Plaintiff's property. Because his claims are not founded in medical malpractice, Plaintiff contends that he was not required to submit his claims

to a medical review panel prior to filing the lawsuit or to exhaust any other administrative requirements.

As an initial matter, the Court recognizes that Rule 12(b)(1) is not the appropriate mechanism for dismissal of Plaintiff's claims. Defendant premises its request for dismissal under both Rule 12(b)(1) and Rule 12(b)(6) on the same arguments and makes no attempt to distinguish its arguments for either mode of dismissal. Defendant provides no legal support for dismissal pursuant to Rule 12(b)(1). Instead, Defendant relies entirely on cases in which courts have dismissed medical malpractice claims for failure to submit to a medical review panel under Rule 12(b)(6). Because Defendant has not provided the Court with, nor is the Court aware of, any case in which an LMMA claim has been dismissed for reason of prematurity pursuant to Rule 12(b)(1), the Court will not adopt the evidentiary standard in  Rule 12(b)(1) and will instead consider Defendant's motion in light of the legal standard provided by Rule 12(b)(6).[1]

---

[1] In deciding a motion to dismiss for failure to state a claim, courts are generally confined to considering evidence contained in the pleadings. In fact, if a court considers evidence outside of the pleadings, "the motion shall be treated as one for summary judgment." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing Fed. R. Civ. P. 12(b) (internal quotations omitted)). However, the Fifth Circuit has recognized that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Here, Defendant has

In order to consider whether dismissal is appropriate pursuant to Rule 12(b)(6), it is necessary to determine whether Plaintiff's claims actually sound in medical malpractice, as Defendant alleges. The LMMA defines the term "malpractice" as:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. Rev. Stat. Ann. § 1299.41(A)(13) (2012). Both this Court and Louisiana courts have recognized that in order to protect the rights of tort victims, the definition of malpractice under the LMMA must be strictly construed and should not be interpreted to include all forms of liability of a health care provider. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451, p. 5 (La. 12/1/04); 888 So.2d 782, 786 (quoting *Sewell v. Doctors*

---

attached a number of exhibits to its *Opposition*. (Rec. Doc. 8-3, Rec. Doc. 8-4). However, the only exhibit referenced by Plaintiff in his Complaint is the "Wheelchair Safety Evaluation" conducted by Kim Zornes, a licensed occupational therapist, on behalf of Defendant. (Rec. Doc. 8-3, p. 3-4). Because none of the other attached exhibits are either contained in Plaintiff's Complaint or central to Plaintiff's claim, they will not be considered by the Court in deciding the instant motion.

*Hosp.*, 600 So.2d 577, 578 (La. 1992)) (finding that the limitations of the LMMA "apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.") (internal quotations omitted); *Taylor v. Ochsner Clinic Found.*, Nos. 11-1926, 11-2221, 2011 WL 6140885, at *4 (E.D. La. Dec. 9, 2011) (Vance, J.). All other liability on the part of health care providers which falls outside of the definition of malpractice is governed by relevant statutes or general tort law. *See Williamson*, 888 So.2d at 786.

In determining whether a claim is considered one for malpractice governed by the LMMA, this Court is guided by the following factors enumerated by the Louisiana Supreme Court in *Coleman v. Deno*:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
> (3) whether the pertinent act or omission involved assessment of the patient's condition[,]
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
> (5) whether the injury would have occurred if the patient had not sought treatment, and
> (6) whether the tort alleged was intentional.

01-1517, p. 17-18 (La. 1/25/02); 813 So.2d 303, 315-16. Contrary to Defendant's contentions, the application of these factors demonstrates that Plaintiff's claims do not constitute malpractice as envisioned by the LMAA.

First, the wrong at issue is not "treatment related" and was not caused by a dereliction of professional skill. The Supreme Court of Louisiana has previously addressed the issue of what constitutes "treatment" by a nursing home. *Richard v. La. Extended Care Centers, Inc.*, 02-0978, p. 12-13 (La. 1/14/03); 835 So.2d 460, 468. In *Richard*, the court concluded that:

> In the case of a nursing home, the nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. However, in our view, it was not the intent of the legislature to have every "act, … by any health care provider … during the patient's … confinement" in a nursing home covered by the [L]MMA.

*Id*. (quoting La. Rev. Stat. Ann. 40:1299.41(A)(9)). The court proceeded to hold that while the act of negligently allowing a patient to fall from a wheelchair involved the "handling of a patient" as described by the LMMA, it did not constitute medical malpractice because it was not related directly to the patient's treatment provided by the nursing home. *Id*. Similarly, here, while it is undisputed that Defendant's taking of Plaintiff's wheelchair was performed during Plaintiff's "confinement" within

10

Hainkel Home, there is no evidence to suggest that this was related in to Plaintiff's "treatment." Because of this, the first factor weighs heavily against malpractice.

The second *Coleman* factor, considering whether the wrong requires expert medical evidence to determine whether a standard of care was breached, also weighs against a finding of malpractice. Defendant alleges that it refused to allow Plaintiff to use the motorized wheelchair largely because of defects in the wheelchair. (Rec. Doc. 8-1, p. 7). Claims involving defects or malfunctions in wheelchairs do not generally require medical expertise. *See Romero v. Willis-Knighton Med. Cntr.*, 38,374, p. 8 (La. App. 2 Cir. 4/7/04); 870 So.2d 474, 479. Accordingly, the second factor also weighs against a finding of malpractice.

Third, Defendant alleges that its conduct in taking the wheelchair from Plaintiff involved an assessment of Plaintiff's condition. Defendant specifically argues that it took the wheelchair from Plaintiff partly because it was generally unsafe and also due to his condition as a paraplegic. While the Court will consider that Defendant's conduct was potentially based in part on Plaintiff's physical condition, this factor weighs only slightly in favor of a finding of malpractice.

Fourth, the taking of Plaintiff's wheelchair did not occur in the general course of a physician patient relationship or within the scope of activities a nursing home is licensed to perform. Defendant does not allege that the intentional taking of a plaintiff's private property against his will is conduct within the scope of nursing home's duties, nor can it. While assisting a plaintiff to find appropriate medical equipment may fall within the scope of these duties, that it is not what Plaintiff alleges occurred here. As such, this fourth factor weighs against a finding of malpractice.

As to the fifth *Coleman* factor, Plaintiff's injury likely would not have occurred if he had not sought treatment and residence at Hainkel Home. However, this factor alone is not determinative. Requiring a finding of malpractice for any claim related to the seeking of medical treatment would defeat the purpose of a strict interpretation of the LMAA, and would allow for the LMMA to encompass virtually any claim related to healthcare. *See Taylor*, 2011 WL 6140885 at *7 (finding that one *Coleman* factor, on its own, is not determinative regarding a finding of malpractice, because "if it were, absurd results would follow.").

Sixth, and finally, Plaintiff claims that Defendant's taking of his wheelchair was intentional, and Defendant does not dispute this. The mere fact that Defendant may have based its decision in part on Plaintiff's physical condition does not change the effect of this factor. Instead, this sixth factor weighs heavily against a finding of malpractice.

Considering all six factors as a whole, only two weigh slightly in favor of a finding that Defendant's alleged conduct constitutes malpractice under the LMMA. As such, the *Coleman* factors as well as the specific facts of this matter collectively support the conclusion that Plaintiff's claims do not sound in malpractice. Because Plaintiff's claims are not for medical malpractice, he was not required to submit his claims to a medical review panel before filing this lawsuit, and dismissal of his claims for prematurity is not warranted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss* (**Rec. Doc. 8**) is **DENIED**.

**IT IS FURTHER ORDERED** that the Oral Argument on this motion, currently set for July 15, 2015 at 9:30 a.m. is **CANCELLED**.

13

New Orleans, Louisiana this 9th day of July, 2015.

CARL J. BARBIER

UNITED STATES DISTRICT JUDGE